**REISMAN PEIREZ REISMAN & CAPOBIANCO LLP**
Jerome Reisman, Esq.
1305 Franklin Avenue
PO Box 119
Garden City, New York 11530
(516) 746-7799
jreisman@reismanpeirez.com

*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

MADISON BENTLEY ASSOCIATES, LLC,                        Chapter 7

                       Debtor.                        Case No. 09-15479 (SHL)
--------------------------------------------------------X

GREGORY MESSER, as Chapter 7 Trustee,

                       Plaintiff,                        Adv. Proc. No. 10-03487 (SHL)

        -against-

BENTLEY MANHATTAN INC.,
MANHATTAN MOTORCARS INC., and
BRIAN MILLER,

                       Defendants.
--------------------------------------------------------X

## DEFENDANTS' RESPONSE TO THE TRUSTEE'S OBJECTIONS
## TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

        Defendants, Brian Miller ("Miller"), Bentley Manhattan Inc. ("Bentley

Manhattan") and Manhattan Motorcars Inc. ("Manhattan Motorcars," collectively,

"Defendants"), by and through their attorneys, Reisman Peirez Reisman & Capobianco LLP,

respectfully submit, pursuant to Federal Rule of Bankruptcy Procedure 9033(b) and Local

Bankruptcy Rule 9033-1, this response to the objections ("Objections") submitted by Gregory

195409

Messer, as chapter 7 trustee ("Trustee") of the debtor Madison Bentley Associates, LLC (the

"Debtor"), to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law on

Cross Motions for Summary Judgment dated January 31, 2014 (the "Proposed Findings").[1]

As set forth below, the Trustee brings these claims on behalf of and for the sole

benefit of the Owner, who apparently refuses to acknowledge the decision of the New York

Court of Appeals which dismissed the Owner's claims against Defendant Brian Miller based

upon his limited guaranty of the Lease.[2] *See Madison Ave. Leasehold, LLC v. Madison Bentley

Associates LLC, et al.*, 8 N.Y.3d 59 (2006), *rearg. denied*, 8 N.Y.3d 867 (2007).  Instead, the

Owner simply ignores that decision and, through the Trustee, tries for the second time to hold a

third party liable for the Debtor's breach of the Lease.  This second attempt, however, is no

better than the first, and the Bankruptcy Court's dismissal of the Trustee's claims should be

affirmed.

## I.

## <u>THE TRUSTEE'S FIRST OBJECTION SHOULD BE OVERRULED</u>

The Trustee's First Claim for relief in the Complaint seeks a judicial declaration

that Defendants are alter egos of the Debtor and thus all of their assets are property of the

Debtor's estate.  The Bankruptcy Court dismissed that claim, finding that the Trustee lacked

standing to assert it because it involved a direct injury to a particular creditor – namely, the

---

[1]     All capitalized terms used herein but not otherwise defined shall have the meanings
ascribed to them in the Proposed Findings.

[2]     In the State Court action the Owner did not assert any claims against Defendants
Bentley Manhattan Inc. and Manhattan Motorcars Inc.  As set forth in Defendants'
opening and reply memorandum of law in support of their motion for summary
judgment, *res judicata* prevents the assertion of any such claims now.  (*See* Def.
Memo., pp. 49-54 (ECF 29); Def. Reply Memo., pp. 29-33 (ECF 51)).

195409

Owner – as opposed to a general injury to the entire creditor body.  (Proposed Findings, pp. 12-13).

In the Objections, the Trustee does not dispute the applicability of *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989), and the Bankruptcy Court's ruling that "a bankruptcy trustee is the proper party to assert an alter ego claim if (a) the alter ego claim could have been asserted by the debtor pre-petition and (b) the claim does not involve a direct injury to a particular creditor."  (Proposed Findings, p. 12).  Instead, the Trustee contests the Bankruptcy Court's conclusion that the Trustee lacks standing to assert the alter ego claim because it "is particular to one creditor.  The claim is an injury to a third party, namely the Owner, for the failure to pay rent."  (Proposed Findings, p. 16; Obj., p. 2).  The Trustee further argues that, even if it lacked standing to assert the alter ego claim, the claim should not be dismissed and the Owner should be substituted as plaintiff as the real party in interest.  Both of those arguments should be rejected and the Proposed Findings accepted by this Court in their totality.

## A.      The Trustee Lacks Standing to Assert the Alter Ego Claim

The Trustee lacks standing to assert the alter ego claim because it cannot establish either element of the standard set forth by the Second Circuit in *St. Paul Fire & Marine Ins. Co.* The alter ego claim could not and would not have been asserted by the Debtor prepetition, and the claim involved a direct injury to a particular creditor, *i.e.*, the Owner.

### 1.      The Debtor Could Not Have Asserted the Alter Ego Claim Prepetition

Under New York law, "veil piercing is not an independent cause of action, but rather a vehicle for holding a shareholder or a parent corporation liable for the debts of the corporate defendant."  *O'Leary v. Indotronix Int'l Corp. (In re Chandre Corp.)*, No. 03-35669,

- 3 -

195409

2005 Bankr. LEXIS 3466, at *20 (Bankr. S.D.N.Y. Oct. 28, 2005); *see Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993) ("An attempt to pierce the corporate veil is an assertion of facts and circumstances that will persuade the court to impose the corporate obligations on its owners, and is not a cause of action independent of that against the corporate general partner.").

In the instant case, the Debtor could not have asserted an alter ego claim against Defendants prepetition because there was no independent cause of action the Debtor could have alleged against Defendants prepetition. Nor does the Trustee even attempt to identify any such cause of action. Additionally, the factual record is clear that the Owner was fully aware that it was entering into the Lease with a shell company devoid of assets, and the Debtor specifically was formed to limit the liability of its shareholders. (*See* Def. Memo., pp. 38-39 (ECF 29)). It defies logic that the Debtor would then attempt to pierce its veil to pay the rent due to the Owner under the Lease, particularly when Miller and his father entered into limited guaranties of the first three years of the Lease. (Proposed Findings, p. 4). Thus, because there was no independent cause of action the Debtor could have alleged against Defendants prepetition, the Debtor could not have asserted an alter ego claim against Defendants prepetition. Accordingly, the Trustee lacks standing to assert its alter ego claim against Defendants.

     **2.**     **The Trustee Alleges an Injury Particular to the Owner**

At its core, the Trustee's alter ego claim seeks to enforce and satisfy the Owner's judgment with the Defendants' assets. It alleges a particularized injury against a particular creditor, namely, the Owner, and as such the Trustee lacks standing to assert it. In the Objection, the Trustee essentially asks the Court to hold form over substance, arguing that the Complaint "pleads no cause of action on behalf of and for the benefit of the Owner." (Obj., p. 2). But the

195409

Trustee's attempt to cloak its claim as a general one, and not one based upon the Debtor's failure to pay rent to the Owner, is transparent and must be rejected.  As recognized by the Bankruptcy Court, "[t]he claim is an injury to a third party, namely, the Owner, for the failure to pay rent. Indeed, it is undisputed that the Owner is the only creditor in this case.  Thus, no other party, other than the Owner, will benefit from pursuit of this alter ego claim."  (Proposed Findings, p. 16).

Indeed, the facts which form the basis for the Trustee's alter ego claim are the **same exact fact**s which formed the basis of the Owner's State Court action against the Debtor, and the Owner is the sole person who allegedly was injured by those facts.  *See Ginger Root Office Assocs., LLC v. Farmer (In re Advanced Packaging Prods. Co.)*, 426 B.R. 806, 820 (C.D. Cal. 2010) ("courts have found particularized injury to a creditor when the conduct that supports piercing the corporate veil is the same conduct that directly harmed the creditor"); *Variable-Parameter Fixture Dev'p Corp. v. Morpheus Lights, Inc.*, 945 F. Supp 603, 607-08 (S.D.N.Y. 1996) (finding creditor suffered a particularized injury because the alleged alter ego caused direct harm to the creditor).  Significantly, counsel for the Trustee is the **same exact counsel** which represented the Owner in the State Court action.

Additionally, the Trustee's assertion that the alter ego claim is asserted "on behalf and for the benefit of the [D]ebtor's bankruptcy estate such that any recovery would be equitably distributed to the creditors thereof" is absurd.  (Obj., p. 4).  The Owner is the **only** creditor holding any claim against the Debtor and thus there will be no distribution to a creditor body in this case.  (Def. Reply, p. 15) (ECF 51).  It cannot be more clear that the Trustee alleges a particularized injury only on behalf and for the sole benefit of the Owner, and not a general one belonging to all creditors.

- 5 -

195409

   While the Trustee argues that the authorities cited in the Proposed Findings do not support the Bankruptcy Court's conclusion, the Trustee is incorrect.  In an effort to distinguish *O'Leary v. Indotronix Int'l Corp. (In re Chandre Corp.)*, No. 03-35669, 2005 Bankr. LEXIS 3466, at \*20 (Bankr. S.D.N.Y. Oct. 28, 2005), which the Bankruptcy Court found to be factually analogous and applicable to the instant case (Proposed Findings, p. 17), the Trustee vainly argues that the claim for relief in that action was an "Action on Judgment" and thus was pleaded upon behalf of one creditor.  (Obj., p. 5).  But, as discussed above, that is exactly the type of claim the Trustee is alleging in this case, and the Trustee's attempt to again place form over substance does not pass muster and defies common sense.  Clearly, the Trustee is not pursuing a "general injury suffered by many creditors" but rather a specific injury suffered by the Owner.

   Likewise incorrect is the Trustee's argument that *Manucci v. Cabrini Medical Center (In re Cabrini Medical Center)*, 489 B.R. 7 (S.D.N.Y. 2012), *The Mediators, Inc. v. Manney (In re The Mediators, Inc.)*, 1996 U.S. Dist. LEXIS 7639 (S.D.N.Y. 1996), *Goldhaber v. Tri-Equities, Inc. (In re Harry C. Partridge Jr. & Sons, Inc.)*, 112 B.R. 593, 596 (Bankr. S.D.N.Y. 1990), *Ginger Root Office Assocs., LLC v. Farmer (In re Advanced Packaging Prods. Co.)*, 426 B.R. 806 (C.D. Cal. 2010), and *In re Landmark Fence Co., Inc.*, 2010 U.S. Dist. LEXIS 130250 (C.D. Cal. 2010), support that he has standing to bring the alter ego claim.

   In fact, each of those cases simply recite and apply the Second Circuit's standard for determining whether a bankruptcy trustee or a creditor has standing to bring a veil piercing claim against an affiliate or shareholder of the Debtor – the standard set forth in *St. Paul Fire & Marine Ins. Co.*  Defendants do not dispute the applicability of that standard.  Rather, Defendants dispute that the Trustee has established the elements of that standard, as was held by the Bankruptcy Court.

195409

Additionally, to the extent any of those cases held that a bankruptcy trustee had standing to assert an alter ego claim, the facts of those cases involve benefits inuring to the benefits of all creditors and are entirely distinguishable from the instant case.  *See In re Cabrini*, 489 B.R. at 22 (upholding bankruptcy court's ruling that the appellants' claims were property of the bankruptcy estate because the underlying "State Court complaint alleged only general harm to all unsecured creditors, as opposed to harm particular to the Appellants"); *In re The Mediators, Inc.*, 1996 U.S. Dist. LEXIS 7639, at *19 ("Despite the Manney's protestations to the contrary, the amended complaint asserts an indirect injury common to every member of the creditors' committee."); *In re Harry C. Partridge Jr. & Sons, Inc.*, 112 B.R. at 596 (denying a motion to dismiss trustee's alter ego claim because the complaint adequately alleged that the trustee sought to collect property of the estate for the benefit of all creditors); *In re Advanced Packaging Prods. Co.*, 426 B.R. at 822 (dismissing alter ego claim because, under California law, the creditor asserted a direct claim and not an alter ego claim)[3]; *In re Landmark Fence Co., Inc.*, 2010 U.S. Dist. LEXIS 130250, at *12 (under California law, the alleged alter ego claim belonged to the bankruptcy estate because it was based upon allegations of general harm to the corporation, rather than a particular harm to the individual creditors).

Further, while the Trustee attempts to distinguish *In re Recoton Corp.*, 307 B.R. 751, 758 (Bankr. S.D.N.Y. 2004), *In re Stein & Day, Inc.*, 113 B.R. 157, 163 (Bankr. S.D.N.Y. 1990), *In re R.H.N. Realty Corp.*, 84 B.R. 356, 360 (Bankr. S.D.N.Y. 1988) and *In re Curtina Int'l*, 15 B.R. 993, 996 (Bankr. S.D.N.Y. 1981) – all of which were cited in the Proposed Findings (pp. 13, 17) – by claiming factual differences in those cases make them inapplicable to this dispute, that attempt fails.  Each of those cases support the general proposition of law that a

---

[3]      Notably, the portion of *Advanced Packaging* cited by the Trustee relates to the bankruptcy court's ruling, and not the district court's ruling on appeal.

195409

bankruptcy trustee may only pursue claims which benefit the entire creditor body and lacks

standing to pursue claims for the benefit of a specific creditor, and such proposition of law is

entirely applicable to this dispute.  *Id.*

Here, the Trustee's alter ego claim is based upon the Debtor's alleged transfer of

its rights under the Lease to avoid liability to the Owner.  The Trustee does not allege any

general harm to the Debtor or to a general creditor body and instead asserts a private controversy

between the Debtor and the Owner.  Accordingly, the Trustee lacks standing to assert the alter

ego claim and the Bankruptcy Court's determination that it should be dismissed should be

upheld.

**B.      There Is No Basis to Substitute the Owner as Plaintiff in this Proceeding**

The Trustee also argues, **for the first time**, that, even if it lacks standing to pursue

the alter ego claim, the Bankruptcy Court should not have dismissed the claim but rather

substituted the Owner as plaintiff pursuant to Rule 17(a)(3) of the Federal Rules of Civil

Procedure, adopted herein in by Bankruptcy Rule 7017.  (Obj. 11).  That argument, however,

fails because as set forth in Defendants' opening and reply memorandum of law in support of

their motion for summary judgment the alter ego claim is barred by the doctrine of *res judicata*.

(*See* Def. Memo., pp. 49-54 (ECF 29); Def. Reply Memo., pp. 29-33 (ECF 51)).

Additionally, while the Trustee cites *Kotbi v. Hilton Worldwide, Inc.,* 2012 U.S.

Dist. LEXIS 36933, at *7-8 (S.D.N.Y. 2012) and *Tarbetsky v. SNET Diversified Grp., Inc.*, 2012

U.S. Dist. LEXIS 115615, at *2-3 (D. Conn. 2012) to support its argument, neither of those cases

are applicable to this dispute as they involve the substitution of a bankruptcy trustee for a debtor

in a pending litigation.  Here, the Trustee is not seeking to substitute the Debtor as plaintiff, but

rather one of the Debtor's creditors.

195409

## II.

## THE TRUSTEE'S SECOND OBJECTION SHOULD BE OVERRULED

In the Complaint, the Trustee asserts a constructive fraudulent conveyance claim (the Second Claim) and an actual fraudulent conveyance claim (the Third Claim).  The Bankruptcy Court properly dismissed both claims finding that they were barred by the applicable statutes of limitations.  (Proposed Findings, pp. 21-29).

The Trustee does not dispute that "[u]nder New York law, constructive fraud actions must be commenced within six years of the alleged fraudulent transfer, without regard to the date of plaintiff's discovery of the transfer."  (Proposed Findings, ¶ 20).  Nor does the Trustee dispute that "[c]laims for actual fraud must be brought within the six-year limitations period or within two years form the time the plaintiff discovered the fraud, or could have discovered it with reasonable diligence."  (*Id.*).  Nevertheless, the Trustee claims that the fraudulent conveyance claims are not time barred because:  (A) the Bankruptcy Court's conclusion that the fraudulent conveyance claims accrued at the commencement of the term of the Lease was incorrect; (B) the running of the statute of limitations was equitably tolled; and (C) the Bankruptcy Court's conclusion that the Owner had constructive knowledge of the fraud from the outset of the Lease is incorrect.  (Opp., p. 12).  None of those three arguments, however, have merit.

195409

## A.      The Fraudulent Conveyance Claims Accrued at the Commencement of the Lease

With respect to its first argument, the Trustee argues that "the conclusion that 'the conveyance occurred when the Defendants started using the Premises' is supported neither by statute nor relevant case law." (Obj., p. 13).  But such argument is unavailing and should be rejected because the date of the Debtor's purported transfer to Defendants is an issue of fact – not one of law.

The Trustee also objects to the Bankruptcy Court's finding by arguing, **for the first time**:

> [T]he fraudulent transfer of the value of the Debtor's leasehold rights to the Defendants occurred, and the cause of action to recover such value accrued, when the Defendants failed to perform the Debtor's obligations under the Lease, in that the transfer to the Defendants of the use of the Premises leased to the Debtor was not *fraudulent* . . . as long as the Defendants complied with the leasehold obligations of paying rent and conducting a car dealership business on the Premises.

(Obj., p. 15).  But that argument is flawed for several reasons.  Notably, it is entirely **contrary** to the position previously asserted by the Trustee, namely, that "the transfer of the Debtor's leasehold rights to conduct business at the Premises . . . was continual and ongoing throughout the Defendants' occupancy of the Premises until their abandonment of same at the end of September, 2003."  (Tr. Opp., p. 22) (ECF No. 46).  Indeed, **not once** prior to this Objection has the Trustee asserted that the fraudulent transfer was not made until the Debtor breached the Lease.  Respectfully, this argument should be rejected for that reason alone.

Moreover, it is illogical to condition a transfer of property on whether there was a breach of a purported obligation.  *See* 11 U.S.C. § 101(54) (defining a transfer to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with" property or an interest in property).

195409

This argument is also flawed because it wrongfully assumes that the Debtor transferred the leasehold rights to Defendants **after** it breached the Lease and that Defendants remained in the Premises **after** such breach.[4] Such assumption, however, is not supported by the record.  In fact, as the Trustee acknowledges, (Obj, p. 15), the Debtor and Defendants abandoned the Premises at the same time they stopped making payments under the Lease.  (Proposed Findings, p. 7).  And the record fully supports that the Debtor's purported transfer of its rights under the Lease to Defendants was made prior to the applicable statute of limitations cut-off on September 11, 2003.  (*See* Proposed Financings, p. 22).  As such, it is clear that the Debtor did not make **any** transfer to Defendants which could form the basis of a fraudulent conveyance action **after** they abandoned the Premises.

Further, the Trustee's citation of case law providing that the cause of action accrues when the fraud occurs is misleading, as it attempts to convey that a fraud alone can be the basis of a claim for actual fraudulent conveyance.[5] But that is simply not the case, as Section 276 of the NYDCL explicitly states, "**Every conveyance made and every obligation incurred with actual intent . . .**"  NY CLS Dr & Cr § 276 (emphasis added).  Thus, a conveyance or obligation of some sort is absolutely necessary for an actual fraudulent conveyance claim, and the factual record in this case makes clear that the alleged conveyance was made **prior** to September 11, 2003 – which is six years prior to the Debtor's bankruptcy filing.

---

[4]     Notably, in making this argument, the Trustee concedes that any transfer made prior to the date on which the Debtor breached the Lease was not fraudulent.

[5]     The Trustee's argument in this regard focuses solely on actual fraudulent conveyance claims and cannot be applicable to constructive fraudulent conveyance claims.

195409

## B.   There Is No Basis to Equitably Toll the Statute of Limitations

In its second argument objecting to the Bankruptcy Court's finding that the fraudulent conveyance claims are time barred, the Trustee contends that the statute of limitations applicable to those claims should have been equitably tolled until discovery was taken in the Debtor's chapter 7 case because, up until that time, the Owner was unaware the dealership at the Premises was being operated by Defendants.  (Obj., pp. 16-17).  Such argument, however, is belied by the factual record of this case.

Specifically, it is undisputed that Defendants Bentley Manhattan and Manhattan Motorcars operated in some capacity at the Premises throughout the Debtor's tenancy. (Proposed Findings, p. 6).  It is also undisputed that Defendant Bentley Manhattan paid most of the monthly rent checks to the Owner during the Debtor's occupancy and maintained an office at the Premises to sell boutique accessories, and that Defendant Manhattan Motorcars owned the automobiles on display at the Premises.  (*Id.*).  For the Owner to now claim that it was unaware that Defendants Bentley Manhattan and Manhattan Motorcars were operating at the Premises, despite being fully aware that Bentley Manhattan was paying the rent checks and Manhattan Motorcars was displaying its vehicles and selling accessories at the Premises during the entire tenancy, is wholly incredible.

Moreover, the Trustee's argument also defies logic because, as chapter 7 trustee of the Debtor's bankruptcy estate, the Trustee stands in the shoes of the Debtor – not the Owner. Thus, it is unclear why the Trustee focuses on when the Owner allegedly knew the facts supporting its claims.  In fact, in making this argument, the Trustee essentially acknowledged that it is bringing this claim on behalf of the Owner alone, and not on behalf of the Debtor's estate, thereby admitting that it lacks standing to bring its First Claim.

195409

Accordingly, there is no basis whatsoever to find that the statute of limitations was equitably tolled.

**C.      The Owner Had Knowledge of the Purported**
         **Fraud from the Commencement of the Lease**

The Trustee also argues that its actual fraudulent conveyance claim was timely because the Bankruptcy Court's determination that "the Owner had notice of the purported fraud more than two years prior to the filing of the bankruptcy case" was erroneous.  (Obj., p. 18) (Proposed Findings, p. 25).  More particularly, the Trustee argues that, until discovery was taken in the Debtor's chapter 7 case, the Owner was unaware of the purported fraud because "the Debtor did not disclose that it had no franchise from Rolls or Bentley enabling it to sell their cars, and no license from the State of New York conferring upon it the legal right to do so." (Obj., p. 20).  Thus, the Trustee asserts, its actual fraudulent conveyance claim is not time barred. This argument, however, is also belied by the factual record of this case and should be rejected.

The Trustee's claim for actual fraudulent conveyance is based upon the Debtor's purported transfer of its rights under the Lease to Defendants.  The undisputed facts establish that the Owner was fully aware that the corporate Defendants were operating out of the Premises and paying the rent checks due under the Lease, among other things.  (Proposed Findings, p. 6). Those facts alone indubitably prove that the Owner knew during the time the Debtor and the corporate Defendants occupied the Premises (July 2000 through September 2003) that the Debtor had transferred at least a portion of its rights under the Lease to Defendants.  It was not necessary for the Owner to also be aware that the Debtor was unable to sell Rolls Royce or Bentley cars. In fact, it is unclear why the Trustee contends that such information would have made the Owner somehow aware of the alleged transfer.  Such information is entirely irrelevant.

- 13 -

195409

Furthermore, even if the Trustee's claim that the Owner was unaware of the alleged fraudulent transfer until discovery in this case were true, it cannot be disputed that the Owner could have discovered it with reasonable diligence given its knowledge of payment of the rental checks, ownership of the vehicles on display and the maintenance of an office to sell accessories.  *See* N.Y. C.P.L.R.§ 213(8) (claims for actual fraud must be brought within the six-year limitations period or within two years from the time the plaintiff discovered the fraud, or could have discovered it with reasonable diligence).  The Trustee's claim is thus time barred and it should be dismissed.

While the Trustee argues that whether the Owner "could have discovered it with reasonable diligence" is a disputed issue of fact which is not subject to summary disposition and warrants a trial, such argument is unsupported in law or fact.  Indeed, all of the cases which the Trustee cites, *Trepak v. Frank,* 44 N.Y.2d 723, 724 (1978), *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 881 N.Y.S.2d 651 (2009), *Gorelick v. Vorhand*, 83 A.D.3d 893, 895, 920 N.Y.2d 703 (2d Dep't 2011), *Citicorp Trust Bank, FSB v. Makkas*, 67 A.D.3d 950, 953, 889 N.Y.S.2d 656 (2d Dep't 2009) and *Miller v. Polow*, 14 A.D.3d 368, 787, N.Y.S.2d 319 (1st Dep't 2005), denied summary judgment because the factual record did not "conclusively" establish that the plaintiff had knowledge of facts from which the fraud could reasonably be inferred.  Here, unlike each of those cases, it is entirely undisputed and **the Trustee has even admitted** that the Owner knew Defendants were operating out of the Premises and paying rent checks.  There is no disputed issue of fact in this case warranting a trial.  The Trustee's actual fraudulent conveyance claim is time barred and the Bankruptcy Court's conclusion to dismiss it should be upheld.

195409

**D.**     **Section 305 Abstention is Inapplicable to the Fraudulent Conveyance Claims**

Section 305 of the Bankruptcy Code states:

> The Court, after notice and a hearing, may dismiss a case under
> this title, at any time if – (1) the interests of creditors and the
> debtor would be better served by such dismissal or suspension . . .

11 U.S.C. § 305 (2014). Here, there has been no notice or a hearing on whether the Debtor's

bankruptcy case should be dismissed.  In fact, no one in this case has ever sought or raised

abstention pursuant to Section 305 prior to receipt of the Objections.  Accordingly, Section 305

abstention is entirely inapplicable and irrelevant to whether summary judgment should be

granted.

## CONCLUSION

For all the reasons set forth above, it is respectfully submitted that the Bankruptcy

Court's Proposed Findings should be upheld and the Trustee's Objections should be overruled.


Dated:   Garden City, New York
         March 31, 2014


                              Respectfully submitted,

                              **REISMAN PEIREZ REISMAN & CAPOBIANCO LLP**


                              By:     /s/ Jerome Reisman
                                      Jerome Reisman, Esq.
                                      1305 Franklin Avenue
                                      PO Box 119
                                      Garden City, New York 11530
                                      (516) 746-7799
                                      jreisman@reismanpeirez.com

                                      *Attorneys for Defendants*


- 15 -